# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| Alexa Knutson, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | **Civil Action No. _____** |
| | § | |
| Amazon.com, Inc. and | § | |
| Coosa Beauty a/k/a Coosa Store, | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S COMPLAINT

**To the Honorable United States Judge of Said Court:**

COMES NOW, Alexa Knutson (hereinafter referred to as "Plaintiff"), by and through undersigned counsel, and respectfully files this Complaint against Amazon.com, Inc. and Coosa Beauty a/k/a Coosa Store (hereinafter referred to collectively as "Defendants"), related to the design, manufacture, marketing, and sale of Coosa's defective and dangerous acrylic nail kit, and in support thereof would show the following:

## I. Parties

1.     Plaintiff Alexa Knutson is an individual who resides in and is a citizen of the State of Texas.

2. Defendant Amazon.com, Inc. ("Amazon") is a Delaware corporation with its principal place of business at 410 Terry Ave. North, Seattle, WA 98109-5210. Amazon may be served with process through its registered agent, Corporation Service Company, 211 East 7th Street, Austin, TX 78701-3218. Amazon controls and profits from the world's largest online marketplace, holding itself out as "Earth's most customer-centric company."

3. Defendant Coosa Beauty a/k/a Coosa Store ("Coosa") is a foreign entity, believed to be located in the People's Republic of China, with its principal place of business at an unknown foreign address. Coosa is engaged in the business of designing, manufacturing, advertising, distributing, and selling dangerous and defective products, including the "Acrylic Nail Tools, Coosa Acrylic" kit, to consumers in the United States, including in this District, exclusively through Amazon's online marketplace.

## II. Jurisdiction and Venue

4. This Court has jurisdiction over the lawsuit under the provisions of 28 U.S.C. § 1332.

5. The parties to this lawsuit are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over Defendants. Amazon conducts continuous and systematic business in Texas. This Court has specific personal jurisdiction over Coosa because it purposefully availed itself of this forum by placing its defective product into the stream of commerce through Amazon, with the knowledge and intent that it would be sold to consumers in Texas.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim—specifically, the delivery, use, and horrific failure of the product that caused Plaintiff's injuries—occurred in Denton County, Texas, which is located in this judicial district.

## III. Facts

### *Amazon's Voluntary Undertaking to Ensure Safety*

8.     Amazon voluntarily undertakes to provide several safety-related services for the benefit of individuals who use products purchased through Amazon's website. Amazon's purported goal in offering these services has been to fully vet the safety and reliability of not just the products being sold on Amazon's website but also the sellers whose products were being sold.

9.     Amazon's affirmative representations of reliability and its sales-enhancing services were in place long before Plaintiff's Coosa nail kit was purchased, and they distinguished Amazon from other online marketplaces that acted as hands-off plat-forms, instead establishing that Amazon's self-chosen role was that of an active marketplace regulator.  Amazon has held that role during all times pertinent to Plaintiff's incident.

10.   Amazon provided extensive details on its voluntary undertaking in a post it made on its own website in 2019:

> "Amazon strives to be Earth's most customer-centric company, where people can find and discover the widest possible selection of safe and authentic goods, and we work hard to earn and maintain your trust. In 2018 alone, we invested over $400 million to protect our store and our customers and built robust programs to ensure products offered

are safe, compliant, and authentic. Amazon offers customers hundreds of millions of items, and we have developed, and continuously refine and improve, our tools that prevent suspicious, unsafe, or non-compliant products from being listed in our store. Our proactive measures begin when a seller attempts to open an account. Our new seller account vetting includes a number of verifications and uses proprietary machine learning technology that stops bad actors before they can register or list a single product in our store. All products offered in our stores must comply with applicable laws and regulations, and our own policies. For example, we require toys to be tested to relevant safety standards set by the Consumer Product Safety Commission. We have a dedicated global team of compliance specialists that review submitted safety documentation, and we have additional qualification requirements that sellers must meet to offer products. In 2018, our teams and technologies proactively blocked more than three billion suspect listings for various forms of abuse, including non-compliance, before they were published to our store. Once a product is available in our store, we continuously scan our product listings and updates to find products that might present a concern. Every few minutes, our tools review the hundreds of millions of products, scan the more than five billion attempted daily changes to product detail pages, and analyze the tens of millions of customer reviews that are submitted weekly for signs of a concern and investigate accordingly. Our tools use natural language processing and machine learning, which means new information is fed into our tools daily so they can learn and constantly get better at proactively blocking suspicious products. In addition, we provide a number of ways for regulatory agencies, industry organizations, brands, customers, and our customer service teams to report safety issues. When we receive these reports, we move quickly to protect customers, remove unsafe products from our store, and investigate. For example, if a customer reports a concern with a product, a customer service associate can instantly trigger an investigation. Additionally, because of our direct relationships with customers, we are able to trace and directly notify customers who purchased a particular product online and alert them to a potential safety issue—our systems are far more effective than other online and offline retailers and customers can feel confident they'll have the information they need. […] We invest significant resources to protect our customers and have built robust programs designed to ensure products offered

for sale in our store are safe and compliant. We want customers to shop with confidence and if ever a customer has a concern, they can contact our customer service team, and we will investigate."

11. Similarly, Amazon's Help and Customer Service web page explains that:

"Amazon works to protect customers from risks of injury associated with products offered on Amazon by looking into and taking action on reported complaints and incidents… Amazon monitors the products sold on [its] website for product safety concerns. In concerning, situations, we may remove the product from the website, reach out to sellers and manufacturers for additional information, place relevant warnings on the product detail page or take other actions depending on the situation… [Amazon] reache[s] out to any customer that previously purchased impacted products (and any seller that may have offered such products) to inform them about the recall."

12. Other related services that Amazon offers for the benefit of users like Plaintiff include: approval of all Fulfillment by Amazon ("FBA") products; provision of 24/7 customer service; receiving and processing all FBA product returns (during which time Amazon inspects the FBA product and determines whether the product can be resold); and categorizing FBA products with the help of both employees and computers/robots, labeling FBA products, and moving them through the distribution process.

13. The contracts between Amazon and its merchants state that Amazon: (a) has the authority to format the product's listing on its online marketplace, which includes how a listing is displayed to consumers; (b) may reject products that Amazon determines are illegal, sexually explicit, defamatory, or obscene; and (c) will require merchants to communicate with their customers exclusively through Amazon's platform, which enables customers to provide user comment reviews on a product's web page listing.

14.   Amazon has an established history of monitoring the safety of the products on its website and taking unilateral action to remove dangerous products from the available listings and to warn consumers who purchased such products of the potential hazards they present. This history includes, for example, Amazon's recall on June 30, 2021 of ~4,900 units of children's sleepwear garments that were being sold on Amazon's site by Chinese companies located in the city of Shenzhen. At all relevant times, Amazon maintained the same kind of control over the Coosa nail kit.

### *Alexa Knutson's Trust in Amazon's Promise*

15.   Prior to early 2024, Plaintiff Alexa Knutson, a 22-year-old woman, wanted to learn a new hobby and practice doing her own manicures.

16.   Like millions of Americans, Alexa trusted Amazon's reputation as a safe and reliable marketplace. She specifically chose to purchase a nail kit on Amazon.com, believing that Amazon, true to its word, was monitoring its store for dangerous products and vetting its sellers.

17.   Additionally, through her previous experiences using her Amazon account, Plaintiff was familiar with the robust communication system Amazon maintained with its account holders and believed that if Amazon ever learned the nail kit was dangerous, then Amazon would conduct a prompt and thorough investigation and, when appropriate, send a similar alert to purchasers of that product and/or completely remove the product from its listings.

18.   Alexa relied on Amazon's promise of safety. She relied on Amazon's $400 million investment to "protect... customers" and its "Product Safety Team" to "investigate" and "monitor" the products it sold. This reliance induced her to forgo purchasing a similar product from a physical, brick-and-mortar store, where she would have been protected by a traditional U.S.-based supply chain of buyers and distributors.

### *The Defective Product and Amazon's Failure*

19.   Relying on Amazon's undertaking, Alexa acquired the "Acrylic Nail Tools, Coosa Acrylic powder Shiny Glitter Nail Art Decoration Professional DIY Gel Nail Kit Manicure File Nail Art Set" (Amazon Standard Identification Number: B08CVK91KQ) from Defendant Coosa on Amazon.com.

20.   The Amazon product page for this kit (run and controlled by Amazon) marketed it directly to Alexa, stating it was "Perfect tools for both... at home DIY nail lover, beginners."

21.   The Amazon product page also made an express warranty, claiming the kit was "Made of natural resin, non-ingredients or adhesives. environmentally friendly ingredients, low odor, non-toxic, safe to use."

22.   This product was not "non-toxic" and it was not "safe to use."

23.   The kit included "1X Nail Glue." This nail glue is, or contains, cyanoacrylate, a hazardous chemical with a known, dangerous, and latent property: it reacts violently and exothermically (generates intense heat) upon contact with common fabrics, including cotton and other materials found in "gym pants."

24.    This catastrophic danger—that the "glue" can instantly become a chemical fire upon a foreseeable spill onto clothing—is a latent defect that would be unknown to any "beginner" or "at home DIY nail lover" like Alexa.

25.    A reasonably prudent marketplace gatekeeper, especially one that has voluntarily undertaken to "monitor... for product safety concerns," would know the chemical properties of the products it sells and would never sell a product containing this dangerous chemical to "beginners" without a prominent, clear warning about its catastrophic reaction with clothing.

26.    Amazon's "robust programs," "$400 million" investment, and "Product Safety Team" completely failed to identify this known chemical hazard. There was no warning on the product itself, nor on Amazon's product detail page, about this specific, horrific danger.

### The Catastrophe

27.    On January 6, 2024, Alexa was at her home in Lewisville, Texas, practicing with the new kit she trusted was "safe to use." She was wearing common "gym pants."

28.    During her use, a small amount of the Coosa nail glue spilled from its container onto her right leg.

29.    Instantly, the glue reacted with the fabric of her pants. As she described, it immediately began "sizzling, smoking and burning" her leg.

30.    The chemical reaction was so violent, fast, and intensely hot that it melted the pants to her skin. She could not remove her clothing before the product inflicted

severe, second and third-degree chemical burns from her right thigh down to her mid-calf.

31.   As a direct result of this defective product and Amazon's failed undertaking, Alexa was rushed to the Medical City Lewisville ER and then transferred to the specialized Medical City Plano Burn Unit. She has undergone painful debridement, suffered infections, and faces the prospect of skin grafts.

32.   Months later, she continues to suffer from permanent nerve damage, burning sensations, and sensitization in her leg, in addition to permanent, disfiguring scars.

## IV. Cause(s) of Action as to Defendants

*Negligence (Against Defendant Amazon)*

33.   At all pertinent times, Amazon had voluntarily undertaken to thoroughly vet the safety and reliability of: 1) all sellers who were listing products on Amazon's website, including Coosa; and 2) all products being sold on Amazon's website, including the Coosa nail kit.

34.   Amazon had also voluntarily undertaken to thoroughly investigate product safety concerns, including latent chemical dangers, and to protect individuals who used products purchased through Amazon by warning them of unsafe products or removing such products from its store.

35.   These services were undertaken by Amazon for the benefit of all individuals who used products purchased through its website, including Plaintiff.

36.   Based on its voluntary undertaking, Amazon owed Plaintiff a duty to exercise reasonable care in the performance of these safety-related services.

37. Although Amazon knew or should have known these safety-related services were necessary for Plaintiff's protection, it failed to exercise reasonable care in performing them, thereby violating its duties. Specifically, Amazon:

   a. Exposed and introduced Plaintiff to a dangerous product by recruiting Defendant Coosa to sell on Amazon;
   b. Failed to properly vet Defendant Coosa to ensure it was a reliable seller of safe products;
   c. Exposed and introduced Plaintiff to a dangerous product by allowing the Coosa nail kit to be listed on Amazon's website;
   d. Failed to properly vet the Coosa nail kit, allowing a dangerous product to be listed on its website;
   e. Failed to ascertain the known chemical dangers of the cyanoacrylate glue it was selling, particularly its violent exothermic reaction with common fabrics;
   f. Failed to place any warning on the product detail page about this latent, catastrophic danger, despite marketing the kit to "beginners";
   g. Failed to remove the dangerous product from its store to protect customers like Plaintiff.

38. Plaintiff relied upon Amazon to perform the above-described safety-related services. Plaintiff would not have purchased the Coosa nail kit through Amazon if she had known Amazon was not the safe and reliable marketplace it put itself out to be. Plaintiff trusted Amazon had confirmed the reliability of Defendant Coosa and the safety of the kit when she purchased and used it.

39. Additionally, and in the alternative, Amazon's failure to properly vet the safety of Defendant Coosa and the nail kit, and its failure to warn about the product's latent chemical danger, significantly increased Plaintiff's risk of harm. Plaintiff would never have been exposed to or purchased this specific dangerous product from this unaccountable foreign seller but for its being listed and promoted as "safe to use"

on Amazon's trusted website. Plaintiff also would never have come across Defendant

Coosa at all but for Amazon's active provision of logistical assistance to and recruit-

ment of Defendant Coosa.

40.    As a direct and proximate result of Amazon's negligence, Plaintiff suffered

severe and permanent injuries and damages as set forth herein.

### Strict Products Liability (Against Defendant Coosa)

41.    Plaintiff incorporates the allegations contained in the foregoing paragraphs

as if fully set forth herein.

42.    Defendant Coosa was engaged in the business of designing, manufacturing,

marketing, and/or selling the Coosa nail kit, which was expected to and did reach

Plaintiff without substantial change in its condition.

43.    The Coosa nail kit was defective and unreasonably dangerous at the time it

left Coosa's control in one or more of the following ways:

    a.    Defective Warning: It was sold without any warning, or with an inadequate warning, of the known and foreseeable danger that its cyanoacrylate glue would violently react with common clothing, causing severe burns.

    b.    Defective Design: The product was defectively designed for its intended use by "at home DIY nail lovers, beginners," as it contained a dangerous chemical component prone to a catastrophic reaction in a home environment where spills are foreseeable, and this danger was not known to an ordinary user.

    c.    Defective Marketing: It was marketed as "non-toxic" and "safe to use," which was affirmatively false and misleading.

44.    As a direct and proximate result of the defective and unreasonably dangerous condition of the Coosa nail kit, Plaintiff suffered severe and permanent injuries and damages.

*Negligence (Against Defendant Coosa)*

45.    Plaintiff incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

46.    Defendant Coosa had a duty to exercise reasonable care in the design, manufacture, testing, warning, marketing, and sale of its nail kit to ensure it was reasonably safe for its intended and foreseeable users, including "beginners."

47.    Coosa breached this duty by, among other things:

   a.    failing to warn of the glue's known exothermic reaction with fabric;
   b.    designing a kit for "beginners" that contained this latent, dangerous chemical; and
   c.    failing to properly test the product for foreseeable failure modes in a home environment.

48.    As a direct and proximate result of Coosa's negligence, Plaintiff suffered severe and permanent injuries and damages.

*Breach of Express Warranty (Against Defendants Amazon and Coosa)*

49.    Plaintiff incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

50.    Defendants Amazon and Coosa, to induce the purchase of the nail kit, expressly warranted to Plaintiff that the product was "non-toxic" and "safe to use."

51.  This warranty was part of the basis of the bargain. Plaintiff purchased the kit in reliance on this affirmation of safety.

52.  Defendants breached this express warranty because the product was, in fact, highly toxic and dangerously unsafe, as it was capable of, and did, cause severe chemical burns upon foreseeable contact with clothing.

53.  As a direct and proximate result of this breach, Plaintiff suffered severe and permanent injuries and damages.

### *Breach of Implied Warranty of Merchantability (Against Amazon and Coosa)*

54.  Plaintiff incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

55.  Defendants, as merchants of nail kits, impliedly warranted that the Coosa nail kit was of merchantable quality and fit for the ordinary purposes for which such goods are used.

56.  The kit was not fit for its ordinary purpose. A nail kit for "beginners" that violently "sizzles, smokes and burns" a user upon a foreseeable spill onto clothing is not of merchantable quality.

57.  As a direct and proximate result of this breach, Plaintiff suffered severe and permanent injuries and damages.

## V. Damages to Plaintiff

58.  Plaintiff seeks recovery for all available damages under any applicable statute and/or common law of the State of Texas.

59. Indeed, as a direct and/or proximate result of the acts and/or omissions of Defendants, Plaintiff has suffered damages which include, but are not limited to, one or more of the following:

   a. Physical pain sustained in the past;
   b. Physical pain that, in reasonable probability, will be sustained in the future;
   c. Mental anguish sustained in the past;
   d. Mental anguish that, in reasonable probability, will be sustained in the future;
   e. Disfigurement sustained in the past;
   f. Disfigurement that, in reasonable probability, will be sustained in the future;
   g. Physical impairment sustained in the past;
   h. Physical impairment that, in reasonable probability, will be sustained in the future;
   i. Medical care expenses in the past;
   j. Medical care expenses that, in reasonable probability, will be incurred in the future;
   k. Lost wages in the past; and/or
   l. Loss of earning capacity that, in reasonable probability, will be sustained in the future.

## VI. Jury Demand

60. Plaintiff asserts her rights under the Seventh Amendment to the U.S. Constitution and respectfully demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## VII. Conclusion and Prayer

61. For the reasons presented herein, Plaintiff prays that upon a final trial of this cause, Plaintiff recovers judgment against one or more Defendants for:

    a.      actual damages above the jurisdictional minimum of the Court, further outlined herein;

    b.      prejudgment and post-judgment interest at the maximum legal rate provided by law;

    c.      costs of suit; and

    d.      all other relief, general and special, to which Plaintiff is entitled to at law and/or in equity, and/or which the Court deems proper.

Respectfully submitted,



**By:**     **/s Andrew G. Counts**

Andrew G. Counts
State Bar No. 24036408
Andrew@OHareLawFirm.com
1038 S. Elm Street
Carrollton, Texas  75006
(972) 960-0000 – Phone
(972) 960-1330 – Fax

**Attorneys for Plaintiff**